IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VIASYS RESPIRATORY CARE INC., | ) | |
| VIASYS MANUFACTURING INC., and | ) | |
| BIRD PRODUCTS CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-579-JJF |
| | ) | |
| VERSAMED MEDICAL SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION
TO DEFENDANT VERSAMED'S MOTION TO
COMPEL PLAINTIFFS TO PRODUCE A PRIVILEGE LOG**

ASHBY & GEDDES
Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Plaintiffs*

*Of Counsel:*

Jeffrey M. Olson
Matthew S. Jorgenson
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013
(213) 896-6000

Dated:   July 20, 2007
182486.1

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND ................................................................................................... 3

    A. The Privilege Log Dispute ...................................................................... 3

    B. The "DeVries Litigation" ........................................................................ 5

    C. Viasys Requires Additional Time To Complete Its Privilege Log ......... 7

    D. Reexamination Of The Patent-In-Suit (the '511 patent) ........................ 7

III. ARGUMENT ...................................................................................................... 10

    A. Versamed Has Failed To Demonstrate The Need For A Document-By-Document Log Of Communications With Litigation Counsel ............................ 10

    B. Alternatively, The Present Motion Should Be Denied Without Prejudice In Favor Of A Stay Of This Case Pending Reexamination ....................................... 12

IV. CONCLUSION ................................................................................................... 16

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                                <u>Page(s)</u>

*Abbott Diabetes Care, Inc. v. DexCom, Inc.*
    2006 U.S. Dist. LEXIS 57469 (D. Del. 2006) ................................................................. 13, 14

*Cost Bros., Inc. v. Travelers Indem. Co.*
    760 F.2d 58 (3d Cir. 1985) ................................................................................................ 13

*Ethicon, Inc. v. Quigg*
    849 F.2d 1422 (Fed. Cir. 1988) ......................................................................................... 13

*In re Imperial Corp. of America*
    174 F.R.D. 475 (S.D. Cal. 1997) ....................................................................................... 12

*Pegasus Development Corp. v. DirecTV, Inc.*
    2003 U.S. Dist. LEXIS 8052 (D. Del. 2003) ..................................................................... 14

*Securities and Exchange Commission v. Nacchio*
    2007 U.S. Dist. LEXIS 5435 (D. Colo. 2007) ................................................................... 12

*Securities and Exchange Commission v. Thrasher*
    1996 U.S. Dist. LEXIS 3327 (S.D.N.Y. 1996) ............................................................. 11, 12

*St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.*
    2003 U.S. Dist. LEXIS 27397 (D. Del. 2003) ................................................................... 14

*United States v. Magnesium Corp. of America*
    2006 U.S. Dist. LEXIS 39944 (D. Utah 2006) .................................................................. 12

*Wyeth v. Impax Laboratories, Inc.*
    2006 U.S. Dist. LEXIS 79761 (D. Del. October 26, 2006) ............................................... 10

*Xerox Corp. v. 3Com Corp.*
    69 F. Supp. 2d 404 (W.D.N.Y. 1999) ................................................................................ 13


<u>Rules</u>

Fed. R. Civ. P. 11 ..................................................................................................................... 10

Fed. R. Civ. P. 26(b)(5)(A) ...................................................................................................... 12

Plaintiffs, Viasys Respiratory Care Inc., Viasys Manufacturing Inc. and Bird Products Corp. ("Viasys"), submit this opposition to Defendant, Versamed Medical Systems, Inc.'s ("Versamed"), motion to compel Plaintiffs to produce a privilege log (D.I. 49).

## I.     INTRODUCTION

The issues presented by Versamed's motion to compel are far narrower than its title suggests. Viasys has never refused to provide a log of relevant and appropriate documents withheld from production based on privilege, including those of counsel who prosecuted the patent-in-suit. Likewise, Viasys has long been agreeable to providing a privilege log as part of mutual exchange of privilege logs with Versamed.

The sole area of dispute involves whether communications with *litigation* counsel should be included in the parties' privilege logs. Viasys does not believe that it should be required to log communications with litigation counsel, particularly given the circumstances of the present case. Such communications are not ordinarily subject to discovery, and none of the issues presented here give rise to a reason for requiring such communications to be logged. Viasys has repeatedly asked Versamed to provide a rationale for why such communications should be logged or explain what legitimate, relevant purpose such a log would serve given the claims, defenses and issues presented in this case. Versamed has been unable to do so, instead relying on conclusory assertions that such documents "may be relevant" to various issues.

Moreover, as will be explained below, requiring a log of communications with litigation counsel presents an undue burden to Viasys. Versamed has requested, and Viasys has produced, a large volume of materials from a separate, past case ("the DeVries litigation") involving numerous tort and contract claims, but that also involved a patent through which the patent-in-suit in the present case claims priority. That claims in the DeVries litigation were vigorously

1

litigated by both sides, and substantial amounts of privileged communications were generated.[1] Combined with the communications involving litigation counsel in the present case, the logging proposed by Versamed's motion would be no small task and is not required where it would be of "no material benefit to the discovering party in assessing whether the privilege claim is well-grounded." *Securities and Exchange Commission v. Thrasher*, 1996 U.S. Dist. LEXIS 3327, *2-3 (S.D.N.Y. 1996) (denying motion for a detailed privilege log for large volume of documents, holding that "[i]n the absence of any articulated showing of need, [Plaintiff] cannot justify its demand for such a detailed log with respect to this category of documents") (emphasis added).

In addition to denying Versamed's request for a document-by-document log of communications with litigation counsel, Viasys seeks additional time to complete its privilege log. Versamed has requested documents relating to the prosecution of the patent-in-suit and related patents, many of which are privileged. Viasys' preparation of a privilege log of such materials is ongoing, but is complicated by the fact that some of these materials were produced in the prior litigation referenced above. Thus, Viasys requests that it be given an additional 30 days in which to complete its privilege log.

Finally, due to a recent development, it is possible for the Court to delay resolution of these issues or avoid them altogether. On July 13, 2007, promptly after Versamed served its initial invalidity contentions in which its states, *inter alia*, that each and every claim of the patent-in-suit is invalid for anticipation over previously unknown and uncited art, Viasys submitted to the United States Patent and Trademark Office a request for *ex parte* reexamination of the patent-in-suit. A copy of this request has also been provided to Versamed. For reasons explained below, Viasys believes this case should be stayed pending the outcome of the

---

[1] Moreover, Viasys now controls both the plaintiff and defendant ventilator companies from that litigation, and is thus the holder of the attorney-client privilege for both.

reexamination, and Viasys' counsel contacted Versamed's counsel to determine whether they are agreeable to a joint motion seeking a stay (or dismissal without prejudice) of the litigation, pending the reexamination.  If they do not agree, then Viasys intends to file an appropriate motion for a hearing on the next available date on the Court's motion calendar.  Presently, Versamed is reviewing the reexamination request and Versamed has not yet advised Viasys of its position.

Thus, Viasys believes that resolution of this motion, and all pending issues, should be put on hold until the issue of the stay has been resolved.  As the Court is aware, one of the primary purposes of a stay pending reexamination is to conserve judicial resources and the resources of the parties.  Instead of denying Versamed's motion on its merits, alternatively, Viasys respectfully requests that the Court deny the motion without prejudice, subject to re-filing at an appropriate time after resolution of the stay issue.

## II.    BACKGROUND

### A.    The Privilege Log Dispute

The parties began discussions regarding the appropriate scope and content of privilege logs to be exchanged in the present case in the later part of April 2007.  The parties addressed the issue on numerous occasions, both in writing and during multiple telephone conferences, from late April through early June.

As to litigation counsel, on the one hand, Versamed initially proposed that the parties agree to log all privileged documents generated prior to the filing date of the complaint and exempt from logging all privileged documents generated after the filing date of the complaint. On the other hand, Viasys proposed that the parties agree that communications with litigation counsel be exempt from logging.

Viasys provided Versamed several reasons supporting its proposal to Versamed during the parties' exchanges.  First, Viasys explained that it was aware of no reason for why communications with litigation counsel would be the subject of legitimate and relevant discovery regarding the claims and defenses of the present case.  Accordingly, Viasys had objected to the production of such documents on multiple grounds in its responses to Versamed's document requests.  *See e.g.,* Versamed's Opening Brief ("Op. Br."), Exh. 1 at 34 (Viasys' response to document request 58) (D.I. 51).[2]  Second, the volume of materials requested by Versamed and subject to protection under the attorney-client privilege or work product doctrine is substantial, as explained below.  Thus, it is unnecessary and unduly burdensome for Viasys to be required to log communications with litigation counsel in the absence of any rationale for why such materials are relevant to the claims and defenses in the present case.  Finally, Viasys objected to Versamed's proposal because it placed the entire burden for logging privileged documents on Viasys while effectively exempting Versamed from logging any communications with litigation counsel.  This is because as the defendant, Versamed is likely to have few if any communications with its litigation counsel regarding the subject matter of this case before the case was filed and Versamed's counsel became aware of it.

Critically, the subject of the present dispute is ***limited*** to communications involving ***litigation*** counsel relevant to the subject matter of the present litigation.  As Viasys has repeatedly told Versamed, Viasys will log relevant documents otherwise withheld from

---

[2] Versamed's incorrectly states, "Counsel for Viasys confirmed that it is withholding documents based on a blanket assertion of privilege and/or attorney work product."  Op. Br. at 5.  As explained more fully below, Viasys has repeatedly stated that there is no legitimate, relevant reason why the documents in question should be produced or logged, and has additionally noted that they are privileged.  This point was clearly made in the letter cited by Versamed as support for its statement quoted above.  *See* Op. Br. Exh. 2 at 3.  Moreover, the context of this letter was a negotiation over the scope of what might be exempt from logging, not a response to document requests setting forth a basis for withholding requested documents.

production on the basis of privilege, and expects Versamed to do the same. *See e.g.,* June 7, 2007 letter from Matthew S. Jorgenson to Eric W. Schweibenz, attached hereto as Exhibit A. The only issue outstanding with respect to such logs is the timing of their exchange.[3]  As explained below, Viasys requests additional time to complete its privilege log.

Moreover, contrary to Versamed's statement in fn. 2 of its Op. Br. (at p. 2), Viasys has identified who constitutes "litigation counsel."  During one of the parties' many teleconferences, counsel for Versamed inquired and counsel for Viasys responded, indicating that communications with "litigation counsel" referred to communications (1) involving law firms and their respective client(s) and co-counsel (2) who had entered an appearance as counsel of record in either the DeVries litigation or the present litigation and (3) involving the subject matter of either case.

Versamed's counsel also asked whether Viasys' outside patent prosecution counsel, specifically Stetina Brunda Garred & Brucker, would be considered "litigation counsel."  Viasys' counsel responded "no."

**B.    The "DeVries Litigation"**

In order to understand the undue burden presented by Versamed's position, a brief explanation of the DeVries litigation is required.

Among the documents requested by Versamed in the present case are all documents "relating to or concerning any litigation … involving U.S. Patent No. 5,868,133" (hereafter "the '133 patent").  *See,* Versamed's Document Request 58, reproduced at p. 24 of Exhibit 1 to Versamed's Motion.  The patent-in-suit in the present case, U.S. Patent No. 6,877,511 (hereafter

---

[3] As Versamed has acknowledged, Versamed has not yet provided Viasys with a privilege log of its own.  *See* Op. Br. at 3, fn. 3.  Versamed' only stated basis for not providing a privilege log is "Viasys' ongoing refusal to produce one."  *Id.*

"the '511 patent") issued from a continuation of a continuation of the application that resulted in the '133 patent. Although they claim different subject matter, the specifications of the two patents are similar.

The '133 patent was one part of a case styled *Bird Products Corp. v. Pulmonetic Systems, Inc. et al.*, C.A. 99-7380, filed in the United States District Court for the Central District of California on July 19, 1999 (referred to by Versamed as "the DeVries litigation"). The DeVries litigation involved numerous and wide-ranging claims and defenses.[4] One of the claims asserted in the DeVries litigation was that a device made by Pulmonetic, the LTV 1000 ventilator, infringed the '133 patent.[5] Before it was settled in 2002, the DeVries litigation was vigorously litigated on both sides. For example, the district court docket contains in excess of 400 entries and 6 law firms are listed as having been counsel of record, including McDermott, Will & Emery; Thomas, Whitelaw and Tyler; Medlen & Carroll and John Bisbikis Law Offices for the plaintiff and Mundell Odlum & Haws and Fairbank & Vincent for defendants. Additionally, Finnegan Henderson, Farabow, Garrett & Dunner are listed as having been counsel of record for plaintiff on appeal. The volume of materials relating to the DeVries litigation (including the appeal) produced by Viasys to Versamed in the present case has been large, as Versamed has acknowledged. *See* Op. Br. at 4.

Viasys has not, however, produced privileged communications between litigation counsel and their respective clients or co-counsel from the DeVries litigation. As the Court can imagine, the volume of such materials is substantial. In response to Versamed's requests that such materials be logged, Viasys repeatedly asked Versamed to provide a reason for why such

---

[4] The claims and defenses included, *inter alia*, issues relating to copyrights, contracts, employment issues, stock options, trade secrets, licensing and patent infringement.

[5] Neither the '133 patent nor the Pulmonetic LTV 1000 device are involved in the present case.

communications should be logged or articulate "how such communications could be the subject of legitimate and relevant discovery for purposes of this case." *See e.g.*, Op. Br., Exh. 2 at 3 (May 31 letter from Matthew S. Jorgenson to Eric W. Schweibenz). Versamed has provided no such explanation, and Viasys can only conclude that the request is made in an attempt to place an enormous financial and time burden on Viasys that will not result in any similar burden being incurred by Versamed.

**C.    Viasys Requires Additional Time To Complete Its Privilege Log**

Not only is the cumulative volume of privileged litigation counsel communications from both cases significant, but the volume of privileged communications <u>not</u> <u>involving</u> <u>litigation</u> <u>counsel</u> that Viasys already is logging is significant as well. Furthermore, this process is complicated by that fact that a limited number of communications between Viasys' outside prosecution counsel and Mr. DeVries (the first named inventor of the '511 patent) were produced during the DeVries litigation. Thus, Viasys is faced with the additional task of ascertaining whether certain documents that would ordinarily be privileged are no longer privileged and should be produced (if not already produced)[6] rather than logged.

**D.    Reexamination Of The Patent-In-Suit (the '511 patent)**

As stated above, Viasys believes that the present case should be stayed pending reexamination of the sole patent-in-suit. Thus, resolution of the present motion can be delayed until after the stay is lifted or potentially avoided altogether, depending upon the outcome of the reexamination. Accordingly, a brief explanation of the circumstances leading up to the reexamination request is warranted.

---

[6] Viasys has already produced the documents it has identified to date as having been previously produced in the DeVries litigation.

The '511 patent issued on April 12, 2005. The present case was filed on September 15, 2006, but few significant events occurred until late spring 2007, when the parties began exchanging documents and preliminary contentions.[7] As one of these contentions, on June 6, 2007, Versamed served a supplemental response to Viasys' interrogatory 9, which sought to discover an explanation for Versamed's affirmative defense that the '511 patent is invalid. In its response, Versamed identified several references that were not before the U.S. Patent and Trademark Office during the prosecution of the '511 patent and made various arguments regarding why these references invalidate the claims. In particular, Versamed alleged that one of the references, referred to by Versamed as "the Airox reference," anticipates all 14 claims of the '511 patent. Of all the references discussed by Versamed in its interrogatory response, the Airox reference is the only reference that Versamed alleges anticipates each claim of the '511 patent.

After considering Versamed's contentions, Viasys promptly submitted a request for *ex parte* reexamination of all claims of the '511 patent in view of the Airox reference to the U.S. Patent and Trademark Office on July 13, 2007.[8] A copy of Viasys' request, which has been assigned Serial No. 90/008,743, is attached hereto as Exhibit B. Viasys further provided the U.S. Patent and Trademark Office with all of Versamed's contentions in the present case regarding

---

[7] No depositions have been taken in the litigation by either party. In addition, except for the present motion (and a motion relating to the timing of the exchange of preliminary contentions that was withdrawn), there has been no motion practice before the Court, or any other reason for the parties to have previously appeared before the Court.

[8] "The Airox reference" is actually a description of a device (the Bios Ms Airox Home 1 device) found in a book entitled "Principles and Practices of Mechanical Ventilation" edited by M. J. Tobin. Versamed has alleged that the publication, rather than the device, which the Tobin book indicates was not available in the United States, is the invalidating reference. Versamed had previously provided Viasys with a limited number of pages from the Tobin book and some preliminary contentions in the form of an "exemplary claim chart" as part of a settlement communication suggesting generally that "all claims of the '511 patent are anticipated by and obvious over the prior art." However, Versamed's June 6, 2007 interrogatory response included additional pages of the Tobin book and an express contention that "the Airox reference" anticipates all claims of the '511 patent.

the asserted invalidity and unenforceability of the '511 patent, as well as additional references and materials identified by Versamed.  Viasys produced a copy of its entire reexamination submission to Versamed on July 18, 2007.

The U.S. Patent and Trademark Office has not yet decided whether to grant Viasys' request for reexamination, but it is almost certain to do so.  In past 5 fiscal years, 96% of the requests for *ex parte* reexamination that were considered by the USPTO were granted (1968 of 2050 requests).  *See* http://www.uspto.gov/web/offices/com/annual/2006/50313a_table13a.html.  Moreover, Versamed is taking the position that the Airox reference anticipates each and every claim of the '511 patent.  If it is correct, and its arguments were provided to the U.S. Patent and Trademark Office, then there is no doubt that the reexamination request will be granted.

For the reasons explained below, Viasys believes that the present case should be immediately stayed pending the outcome of the reexamination or, at a minimum, temporarily stayed until the question of a more conclusive stay pending reexamination can be resolved.  As stated above, Viasys contacted Versamed's counsel prior to filing this opposition, and to determine whether they are agreeable to a joint motion seeking a stay (or dismissal without prejudice) of the litigation, pending the reexamination.  If they do not agree, then Viasys intends to file such a motion at the next available opportunity on the Court's motion calendar.  Presently, Versamed is reviewing the reexamination request and it has not yet advised Viasys of its position.

## III.  ARGUMENT

### A.  Versamed Has Failed To Demonstrate The Need For A Document-By-Document Log Of Communications With Litigation Counsel

Viasys has, on multiple occasions, stated its willingness to provide a log of relevant, responsive documents withheld on the basis of privilege.  The sole issue presented by Versamed's motion is whether communications involving litigation counsel should be logged. Viasys has asked Versamed to articulate why such documents should be logged or how such communications could be the subject of legitimate and relevant discovery with respect to the claims and defenses in this case.  *See e.g.*, *Wyeth v. Impax Laboratories, Inc.*, 2006 U.S. Dist. LEXIS 79761 *1-3 (D. Del. October 26, 2006) (denying motion to compel production of documents from separate litigation involving the same patents where the requestor failed to "demonstrate[] why it is entitled to documents from [the other litigation]" or show that the requested documents "beyond what [plaintiff] has already produced or offered to produce, are critical to resolving the issues before the Court").

In its opening brief, Versamed states in conclusory fashion that communications with litigation counsel "are relevant to a number of important issues in this case, including the scope of Plaintiffs' privilege/work product waiver, claim construction, Versamed's defense of inequitable conduct, non-infringement and invalidity, as well as Plaintiffs' apparent failure to conduct a pre-filing investigation as required by Fed. R. Civ. P. 11."[9]  Op. Br. at 3.

---

[9] Versamed has never sent Viasys a Rule 11 letter and has never served or filed a Rule 11 motion because Versamed has no basis for doing such.  This is not a frivolous case, and Versamed has never alleged that it is.  Thus, the discovery Versamed has sought regarding "pre-filing investigations" is in no way relevant to the claims, defenses or issues presented in this case. Viasys has objected to such discovery on that basis, as well as on the basis that such materials would be protected by the attorney-client privilege and work product doctrine. Viasys has asked Versamed to explain how such discovery would be relevant to the merits of the case (i.e.,

Yet, Versamed utterly fails to explain **how** a log of such communications might possibly be relevant in its brief.  The sole example Versamed provides relates to communications involving Plaintiff Bird's outside prosecution counsel.  *See* Op. Br. at 7-8.  However, Viasys has *agreed* from the outset to log relevant, privileged communications with outside prosecution counsel and was in the process of doing so when Versamed filed its motion.  Thus, Versamed's sole example has nothing to do with the present dispute, and Versamed has still not yet articulated a reason for  why communications with **litigation counsel** should be logged.

Even assuming, *arguendo*, that communications with litigation counsel would otherwise be the legitimate target of discovery in this case, Rule 26(b)(5) does not itself require the document-by-document listing sought by Versamed.  Thus, "in appropriate circumstances, the court may permit the holder of withheld documents to provide summaries of the documents by category or otherwise limit the extent of his disclosure. This would certainly be the case if (a) a document-by-document listing would be **unduly burdensome** and (b) the additional log would be of **no material benefit** to the discovering party in assessing whether the privilege claim is well-grounded."  *Securities and Exchange Commission v. Thrasher*, 1996 U.S. Dist. LEXIS 3327, *2-3 (S.D.N.Y. 1996) (denying motion for a detailed privilege log for large volume of documents, holding that "[i]n the absence of any articulated showing of need, [Plaintiff] cannot justify its demand for such a detailed log with respect to this category of documents") (emphasis added).  *See also*, *Securities and Exchange Commission v. Nacchio*, 2007 U.S. Dist. LEXIS 5435

---

relevant to the claims, defenses or issues presented in the case) and Versamed has provided no such explanation.  Moreover, Versamed's conclusion that Plaintiffs "apparent[ly] fail[ed] to conduct a pre-filing investigation as required by Fed. R. Civ. P. 11" is wholly baseless.  Op. Br. at 3.  Viasys and its attorneys satisfied all of their ethical and legal obligations in connection with the filing of the complaint and the claims pled therein.  It is improper for Versamed to use vague and indirect accusations of ethical or Rule 11 violations to attempt to gain discovery of otherwise irrelevant and privileged information.

*31-35 (D. Colo. 2007) (same, citing *Thrasher*); *United States v. Magnesium Corp. of America*, 2006 U.S. Dist. LEXIS 39944 *22-23 (D. Utah 2006) (same, citing *Thrasher*); *In re Imperial Corp. of America*, 174 F.R.D. 475 (S.D. Cal. 1997) (same, citing *Thrasher*).

The purpose of a privilege log is to enable assessment of whether the privilege is properly claimed, not to provide insights into, or partial disclosures of, communications that are properly withheld as privileged. *See* Fed. R. Civ. P. 26(b)(5)(A). The cases cited above further acknowledge that where requests seek "wholesale production of documents that are ordinarily covered by the work product rule … and attorney client privilege," and where a document-by-document log might reveal "aspects of litigation strategy," such factors weigh against requiring a document-by-document log. *Thrasher* 1996 U.S. Dist. LEXIS 3327 at *3-4; *see also*, *Nacchio*, 2007 U.S. Dist. LEXIS 5435 at *32 (same); *In re Imperial Corp. of America*, 174 F.R.D. at 478 (same).

Versamed already has the "summary" information of the type discussed in *Thrasher* regarding the documents in question. For the most part, these documents are privileged communications between litigation counsel and a client or co-counsel relating to the subject matter of the DeVries litigation.[10] Versamed has the pleadings from the DeVries litigation and knows the identities of "litigation counsel" and the time periods involved. Versamed has failed to explain why a more detailed log of these documents is necessary.

**B.** **Alternatively, The Present Motion Should Be Denied Without Prejudice In Favor Of A Stay Of This Case Pending Reexamination**

If necessary, Viasys will file a motion to stay the litigation and set it for hearing on the next available date on the Court's motion calendar. However, because that date is not until

---

[10] The remainder involves the litigation counsel in the present case.

September 21, 2007, Viasys sets forth below the factual and legal framework for that motion, should the Court determine that it is appropriate to take up the issue of a temporary or permanent stay before that date. Between August 3 and September 21 the Court and parties will be undertaking potentially substantially and unnecessary work (depending on the outcome of the reexamination) including the claim construction hearing that is now scheduled for a hearing on September 19, 2007.

"The decision to stay a case is firmly within the discretion of the court." *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, 2006 U.S. Dist. LEXIS 57469, *17 (D. Del. 2006) (granting motion for stay pending reexamination) *citing Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). "This authority applies equally to patent cases in which a reexamination by the PTO has been requested." *Id. citing Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (noting that "[c]ourts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted).

In determining whether a stay is appropriate, the court's discretion is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Id. quoting Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999). Viasys will address each factor in turn.

Beginning with the last factor, discovery in this case is not complete and a trial date, which has not been set, is at least 10 months away. Written discovery commenced in this case in March 2007. The extent of discovery thus far has been the exchange of document requests and

interrogatories and the production of documents.  No depositions have occurred, though several are likely to be necessary.  Fact discovery is presently scheduled to close in four months, on November 14, 2007.  Moreover, no expert discovery has occurred, and no experts have been disclosed by either party.[11]  Expert discovery is presently scheduled to close on January 25, 2008.  No other substantial activities have occurred in this case to date.  A Markman hearing is presently scheduled for September 19, 2007, and opening Markman briefs are due August 22, 2007.  No dispositive motions have been filed or are pending, and the dispositive motion cutoff date is February 25, 2008.  Moreover, a trial date has not yet been set, though a pre-trial conference is scheduled for May 8, 2008.  Thus, a trial is at least 10 months away.

In sum, the parties are still in the relatively early stages of this case.  This factor weighs heavily in favor of granting a stay immediately.  Compare *Abbott Diabetes Care*, *supra*, 2006 U.S. Dist. LEXIS 57469 at *17 (granting stay pending reexamination where close of discovery was more than 5 months away) and *Pegasus Development Corp. v. DirecTV, Inc.*, 2003 U.S. Dist. LEXIS 8052, *2, 7 (D. Del. 2003) (granting stay pending reexamination where close of discovery was three months away "and the trial, although scheduled, is some nine months in the future") with *St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.*, 2003 U.S. Dist. LEXIS 27397, *4 (D. Del. 2003) (denying stay pending reexamination where motion was filed "after the close of discovery and weeks before the commencement of the scheduled trial date").

An immediate stay will have the maximum effect in conserving the resources of both the Court and the parties.  The longer this case continues without a stay, the more resources the parties and the Court will spend litigating and resolving issues that may not be necessary to decide, as discussed below.  Thus, at a minimum, Viasys respectfully requests that the Court

---

[11] The protective order entered in this case requires advance disclosure of any expert witness before any of the opposing party's confidential information may be disclosed *See* D.I. 29 at 4.

temporarily stay the case until it can resolve the question of whether to stay the case permanently pending the outcome of the reexamination.

Turning to the second factor, a stay will very likely simplify the issues for trial regardless of the outcome of the reexamination. The '511 patent is the sole patent at issue in this case, and if none of the claims survive the reexamination process, the Patent Office will have effectively resolved all outstanding claims and counterclaims in this case. Alternatively, some claims may be eliminated during reexamination, thus narrowing the scope of this care, or the patentability of all claims may be confirmed. However, even if the patentability of all of the claims is confirmed, the issues in question for trial will still be simplified. The Patent Office will have considered the patentability of the claims in view of the previously uncited references and Versamed's contentions and will have decided that all claims are patentable. Moreover, the Patent Office will not limited by the presumption of validity or required to prove invalidity by clear and convincing evidence (as in the case of a trial). Thus, if a stay is granted, the issues that the experts and jury would otherwise have to address will have already been addressed by the Patent Office.

Turning to the last remaining factor, a stay would not unduly prejudice or present a clear tactical disadvantage to Versamed. Like many infringement defendants, Versamed has previously sought a later trial date in this case. For example, during the parties' negotiations over a scheduling order, Versamed initially proposed a schedule that would result in a trial at least 8 months later than in the schedule initially proposed by Viasys.[12] Thus, this case is unlike the more common case where it is the accused infringer who puts the patent into reexamination

---

[12] Per the Court's instructions, the last date on the parties' proposed scheduling order was the dispositive motion cutoff date, and the parties were initially more than 8 months apart on this date. The parties subsequently exchanged numerous counterproposals and eventually compromised on the schedule approved by the Court.

and then seeks to stay the litigation.  In such cases, the motive is often delay, and the prejudice to the patentee must be considered, where a stay will further delay the patentee's ability to enforce his patent and take advantage of the essential and highly valuable right to exclude that it provides.  Such considerations are not present in this case.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Viasys respectfully requests that the Court deny Versamed's motion to compel a privilege log.  Furthermore, Viasys requests that the Court immediately stay the case pending the outcome of the reexamination of the '511 patent or at a minimum, stay the proceedings temporarily until the Court decides whether to stay the case pending reexamination. Should the Court stay the case, the present motion need not be decided.

ASHBY & GEDDES

*/s/ John G. Day*

Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Plaintiffs*

*Of Counsel:*

Jeffrey M. Olson
Matthew S. Jorgenson
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013
(213) 896-6000

Dated:  July 20, 2007

16

# EXHIBIT A





SIDLEY AUSTIN LLP
555 WEST FIFTH STREET
LOS ANGELES, CA 90013
(213) 896 6000
(213) 896 6600 FAX

BEIJING
BRUSSELS
CHICAGO
DALLAS
FRANKFURT

GENEVA
HONG KONG
LONDON
LOS ANGELES
NEW YORK

SAN FRANCISCO
SHANGHAI
SINGAPORE
TOKYO
WASHINGTON, DC

FOUNDED 1866

June 7, 2007

Eric W. Schweibenz, Esq.                                VIA PDF AND MAIL
**OBLON SPIVAK McCLELLAND MAIER
& NEUSTADT, P.C.**
1940 Duke Street
Alexandria, Virginia 22314

      Re:    Viasys Respiratory Care, Inc. et al. v. Versamed Medical Systems, Inc.
            Case No. 06-CV-579

Dear Eric:

        I am writing regarding the two letters you sent yesterday, both dated June 6, 2007.

        We have thoroughly addressed the issued raised in your letters in the past, both over the phone and in writing, and reject your posturing. As to the third-party subpoenas, I addressed this issue in my May 31 letter. To repeat, a large volume of these documents have already been produced. We are in the process of verifying that all relevant, non-duplicative, non-privileged documents have been produced and will make any supplemental production shortly. As to privilege logs, we will log by an appropriate date, as we expect you will log, all relevant withheld documents consistent with the federal rules and any orders of the court or agreements of the parties.

        Please do not hesitate to call me if you would like to discuss these or any other discovery issues.

                        Sincerely,

                        Matthew S. Jorgenson

MSJ ng

cc:    Jack B. Blumenfeld, Esq. (via PDF)
       Steven J. Balick, Esq. (via PDF)
       Jeffrey M. Olson, Esq. (via PDF)

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

# EXHIBIT B

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re the Patent of:                                   )
                                                       )
    **Douglas F. DeVries**                        )  Original Examiner:  Aaron J. Lewis
    **Michael J. Cegielski**                      )
    **Warner V. Graves, Jr.**                     )  Original Art Unit:  3743
    **Malcom R. Williams**                        )
    **Michael B. Holmes**                         )
                                                       )
Patent No.:   **6,877,511 B2**                          )
                                                       )
Reexam Control No.: **TBD**                             )
                                                       )
Issued:       **April 12, 2005**                        )
                                                       )
For:   **PORTABLE DRAG COMPRESSOR**                     )
       **POWERED MECHANICAL**                 )
       **VENTILATOR**                          )
_____              )

### Request for *Ex Parte* Reexamination

### (35 U.S.C. §§ 301-307; 37 C.F.R. § 1.510)

Mail Stop *Ex Parte* Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

      *Ex parte* reexamination under 35 U.S.C. §§ 301-307 and 37 C.F.R. § 1.510 is requested

of U.S. Patent Number 6,877,511 B2 ("the '511 patent"). The '511 patent issued April 12, 2005

to DeVries et al., and is still in force. This request for reexamination is made by the owner of the

'511 patent, Bird Products Corporation.

## I.    Introductory Matters

### A.    Statement of Representative Capacity (37 C.F.R. § 1.510(f))

This request for *ex parte* reexamination is made on behalf of Bird Products Corporation,

the **"Patent Owner,"** pursuant to 37 C.F.R. § 1.510(a). The undersigned attorney, Kenneth J.

Sheehan (Reg. No. 36,270), hereby confirms that he is acting in a representative capacity for

Bird Products Corporation in this matter pursuant to 37 C.F.R. § 1.34(a).

### B.    Fee Payment (37 C.F.R. § 1.20(c)(1))

Payment for this reexamination request ($2,520, see 37 C.F.R. § 1.20(c)(1)) is enclosed.

### C.    Copy of the '511 Patent (37 C.F.R. § 1.510(b)(4))

A double-column copy of the subject '511 patent is enclosed as **Attachment A** to this

Request for Reexamination.

### D.    Claims for Which Reexamination Is Requested (37 C.F.R. § 1.510(b)(2))

Reexamination is requested of claims 1-14 of the '511 patent (i.e., all claims). A detailed

statement of the pertinency and manner of applying the cited prior art to every claim for which

reexamination is requested is presented below.

Specifically, reexamination is requested based on a printed publication referred to herein

as the **"Airox Reference."** The Airox Reference (**Attachment B** to this request) is a portion of a

book entitled *Principles and Practice of Mechanical Ventilation*, Martin J. Tobin (ed.), New

York: McGraw-Hill, Inc., 1994, including pages 127-128, Figures 4-2 (page 112), 4-3 (page

113), 4-7 (page 119), 4-14 (page 128) and 4-26 (page 138), as discussed herein. (For the sake of

completeness, the entire chapter in which these pages appear has been included in the

2

attachment.) The Airox Reference was not of record during the original examination of the '511 patent.

### E.    Litigation Involving the '511 Patent, And Parent Patent No. 5,868,133

As explained in detail in the accompanying Information Disclosure Statement, and noted below, the '511 patent is presently the subject of patent infringement litigation in the U.S. District Court for the District of Delaware (the "pending Delaware '511 patent litigation"). In addition, U.S. Patent No. 5,868,133 to DeVries et al., which issued from a parent application to which the '511 patent claims priority, was previously the subject of patent infringement litigation in the U.S. District Court for the Central District of California (the "DeVries '133 patent litigation"). Information relating to these two litigations is submitted with the accompanying IDS. The Examiner is respectfully requested to consider such information for potential pertinence or applicability with respect to the present request for reexamination, and/or in connection with any substantive examination as may be ordered based on this request for reexamination.[1]

### II.    Statement of "Substantial New Question of Patentability" (37 C.F.R. § 1.510(b)(1))

Briefly put, the subject matter described in the '511 patent[2] involves a ventilator apparatus, and ventilation method, in which a compressor ventilator of a specified structure is

---

[1] For example, the defendant in the pending Delaware '511 patent litigation has asserted that the Airox Reference anticipates each of claims 1-14 of the '511 patent. As further explained in the accompanying IDS, the defendant in that litigation has raised additional allegations of invalidity and unenforceability of the '511 patent. Additionally, in the earlier DeVries '133 patent litigation, the district court issued constructions of certain terms in the claims of the '133 patent which the Examiner may deem to have some pertinence to the claims of the '511 patent as raised in the present request for reexamination.

[2] The summary of the subject matter of the '511 patent is not intended to characterize any elements of the claims.

3

provided. In general, the compressor ventilator includes a compressor with a gas inflow passageway or port, a gas outflow passageway or port, and a controller apparatus to intermittently accelerate and decelerate the compressor (as by rotation of a rotor of the compressor) to deliver inspiratory gas. In some embodiments of the compressor ventilator, a non-valved gas outflow passageway, or non-valved inspiratory gas flow passageway for carrying gas from the outflow port of the compressor, is provided. A rotor of the compressor may comprise a plurality of blades formed circularly therearound. An oxygen blending apparatus in communication with inflow passageway may be provided. Power to the compressor ventilator may be provided by a portable battery.

As described for example in the abstract of the '511 patent, in practice the compressor of the ventilator may be accelerated at the beginning of each inspiratory ventilation phase to a sufficient speed to deliver the desired inspiratory gas flow, and subsequently stopped or decelerated to a basal flow level to permit the expiratory ventilation phase to occur. The ventilator device may be constructed to be small and lightweight enough to be used in portable applications, and may be power efficient enough to be operate for extended periods of time on internal or external batteries.

A brief statement of the potential substantial new question of patentability presented by this request for reexamination is as follows:

*Are claims 1-14 of the '511 patent, or any of them, anticipated under § 102, or obvious under § 103, based on the Airox Reference?*

A detailed explanation of the pertinency and manner of applying the Airox Reference to each claim for which reexamination is requested is presented below.

4

**III.    Explanation of Pertinency and Manner of Applying the Cited Prior Art (37 C.F.R. § 1.510(b)(2))**

    **A.    The "Airox Reference"**

The "Airox Reference" is a portion of a book entitled *Principles and Practice of Mechanical Ventilation*, Martin J. Tobin (ed.), New York: McGraw-Hill, Inc., 1994, including pages 127-128 and Figures 4-2 (page 112), 4-3 (page 113), 4-7 (page 119), 4-14 (page 128) and 4-26 (page 138), and associated text. See **Attachment B.**

Based on information available on-line from the U.S. Copyright Office, appended hereto as **Attachment C**, the Patent Owner understands that the Tobin book containing the Airox Reference was published in the United States on or about April 22, 1994, and as such does not qualify as a prior art publication to the '511 patent under 35 U.S.C. § 102(b) (the '511 patent having a priority filing date of October 14, 1994). To the extent that the Airox Reference would qualify as prior art as a printed publication under § 102(a) or other provision of law, reexamination of the claims of the '511 patent is respectfully requested. [3]

The Airox Reference describes an electrically powered, compressor-driven, microprocessor-controlled ventilator known as the Bio MS "Airox Home 1" ventilator ("Airox device"). The reference states that the gas delivery system of the Airox device produces a "square-wave flow pattern and a rectilinear pressure curve." Inspiration is said to be either time ("control") or pressure ("assist/control") cycled, and exhalation is volume cycled. During control mode ventilation, the user sets a rate, tidal volume, and inspiration/expiration (I/E) ratio (the latter from 1:3 to 1:1). In assist/control mode, the trigger sensitivity is also set. Patient inspiratory effort and system pressure are monitored from the inspiratory circuit at the proximal airway. Alarms, including high and low airway pressure alarms, are provided.

---

[3] By this request, the Patent Owner does not concede or admit that the Airox Reference does in

The Airox reference states that gas enters the compressor-blower of the Airox device via a one-way valve but has a free exit path into the inspiratory circuit. No exit one-way valve is present at the blower.

An oxygen accumulator may be used with the Airox device. The Airox Reference states that the device may be powered with an internal rechargeable battery, or by external ac or dc power.

## B.     Application of the Airox Reference to the Claims of the '511 Patent

As asserted by Versamed in the '511 patent litigation, each of the claims of the '511 patent is anticipated by the Airox reference and thus the Examiner may consider that a substantial new question of patentability of claims 1-14 of the '511 patent has been raised under 35 U.S. C § 102 and/or 103.

As noted above (and explained in more detail in the accompanying Information Disclosure Statement), a parent patent to the '511 patent, DeVries et al. U.S. Patent No. 5,868,133, was previously the subject of litigation (the "DeVries '133 patent litigation"). The court, in the course of that litigation, issued a "Markman" order construing certain terms of claim 1 of the '133 patent which the Examiner may deem relevant to the construction of certain terms in the present '511 patent. A copy of the court's June 30, 2000 claim construction order in the DeVries '133 patent litigation is attached hereto as **Attachment D**, and is referenced in the charts below.

---

fact qualify as prior art to the '511 patent.

*Claim 1:*

| 1. A compressor ventilator for ventilating lungs of a mammal,[4] said ventilator comprising: | *Airox Reference:* States that the Airox Home 1 ("Airox device") is a "compressor-driven, microprocessor-controlled ventilator" (page 127). |
|---|---|
| a) a compressor comprising: | *Airox Reference:* States (page 127) that the gas flow pattern of the Airox device is similar to other ventilators of the home mechanical ventilation type (referring to Figure 4-2, page 112), but "this unit uses a compressor-blower." |
| i) a housing having a gas inflow passageway for delivering gas into said housing[5] and | *Airox Reference:* States that "[g]as enters the blower via a one-way check valve …" (page 127); see also Figure 4-14 (page 128, depicting the Airox device) and Figure 4-2 (page 112, depicting "generalized gas flow routes through typical home care ventilators," including a gas entry one-way check valve "A"). |
| a non-valved gas outflow passageway[6] from said housing; and | *Airox Reference:* States that "[g]as enters the blower via a one-way check valve but has a free exit path into the inspiratory circuit. No exit one-way valve is present at the blower" (page 127). |

---

[4] In its June 30, 2000 "Markman" claim construction order in DeVries '133 patent litigation") involving U.S. Patent 5,868,133 (DeVries et al., parent patent to the '511 patent), the Court adopted the parties' stipulated meaning of the phrase *"for ventilating the lungs of a mammalian patient"* in claim 1 of the '133 patent as meaning, *"The device facilitates the respiratory flow of gas into the lungs of a patient who is a mammal, including but not limited to, humans."* See Attachment C hereto, at page 3.

[5] In the DeVries '133 patent litigation, the District Court adopted the parties' stipulated meaning of the term *"a housing"* in claim 1 of the '133 patent as meaning, *"A structure which is at least partially enclosed."* See Attachment C, page 3. The Court also adopted the parties' stipulated meaning of the phrase *"having a gas inflow passageway and a gas outflow passageway"* in claim 1 of the '133 patent as meaning, *"The housing has a conduit which permits gas to flow into the housing and a conduit which permits gas to flow out of the housing."* Id. The Court also accepted the parties' stipulation that the word *"gas"* means *"Any substance in the gas phase, including, but not limited to, air, oxygen, and mixtures of air and oxygen."* Id.

[6] As to the construction of the term *"gas outflow passageway"* in the DeVries '133 patent litigation, see preceding footnote.

| ii) a motor-driven rotor mounted within said housing,[7] | *Airox Reference:* States that "[t]his unit uses a compressor-blower," and that "[g]as enters the blower via a one-way valve but has a free exit path into the inspiratory circuit" (page 127). |
|---|---|
| wherein when said rotor is rotated in a first direction, gas within said housing will be compressed and expelled through said outflow passageway as lung inspiratory gas;[8] and | *Airox Reference:* States that the Airox gas delivery system produces a "square-wave flow pattern and a rectilinear pressure curve" (pages 127-128); compare Figure 4-3 (page 113, depicting a sine-wave flow pattern, and sigmoidal pressure curve, associated with a different home care ventilator device). |
| b) a controller apparatus[9] to intermittently accelerate and decelerate the rotation of said rotor[10] in accordance with desired flow rate and pressure of inspiratory gas to thereby deliver | *Airox Reference:* States that the Airox device is an "microprocessor-controlled ventilator" having a "compressor-blower," capable of producing a square-wave flow pattern and a rectilinear pressure curve (compare Figure 4-3, page 113), in which the user can set parameters including rate, tidal volume, I/E ratio, assist/control trigger |

---

[7] In the DeVries '133 patent litigation, the District Court adopted the parties' stipulated meaning of the phrase *"a rotor mounted within said housing"* in claim 1 of the '133 patent as meaning, *"A rotatable, bladed, circular-shaped impeller affixed for rotation within the housing."* See Attachment C, page 3.

[8] In the DeVries '133 patent litigation, the District Court adopted the parties' stipulated meaning of the phrase *"such that when said rotor is rotated in a first direction said blades will compress gas within said housing and expel said compressed gas out of said outflow passageway"* in claim 1 of the '133 patent as meaning, *"When the rotor is rotated in a particular direction, the blades will draw gas into the housing through its inflow passageway, compress that gas, and push the compressed gas out the outflow passageway of the housing."* See Attachment C, page 4.

[9] In the DeVries '133 patent litigation, the District Court adopted the parties' stipulated meaning of the term *"a controller apparatus"* in claim 1 of the '133 patent as meaning, *"A device that controls the rotary drag compressor."* See Attachment C, page 4.

[10] In the DeVries '133 patent litigation, the District Court construed the disputed claim phrase *"to intermittently accelerate and decelerate the rotation of said rotor"* in claim 1 of the '133 patent as meaning, *"to cause the rotor to move at a faster speed and then a slower speed on an alternating basis."* See Attachment C, page 5.

| discrete periods of inspiratory gas flow[11] at said flow rate and pressure through said outflow passageway.[12,13] | sensitivity, and high pressure alarm level (pages 127-128). "Inspiration is either time (control) or pressure (assist/control) cycled, while exhalation is volume cycled" (page 128). |

*Claim 2:*

| 2. The ventilator of claim 1, wherein said rotor comprises a plurality of blades formed circularly therearound.[14] | *Airox Reference:* States the "[t]his unit uses a compressor-blower" (page 127). |

*Claim 3:*

| 3. A compressor ventilator for ventilating lungs of a mammal, | *See claim 1* (preamble). |

[11] In the DeVries '133 patent litigation, the District Court construed the disputed claim phrase ***"so as to deliver discrete periods of inspiratory gas flow"*** in claim 1 of the '133 patent as meaning, *"so as to deliver individual patient breaths. The rate of gas flow generated by the compressor is not substantially continuous."* See Attachment C, page 5.

[12] In the DeVries '133 patent litigation, the District Court adopted the parties stipulated meaning of the word ***"and"*** as used in Paragraph B of claim 1 of the '133 patent [*"B. a controller apparatus to intermittently accelerate and decelerate the rotation of said rotor in accordance with desired flow rate and pressure of inspiratory gas and in accordance with stored individualized compressor characterization information so as to deliver discrete periods of inspiratory gas flow at said flow rate and pressure through said outflow passageway"*] as meaning that *"the intermittent acceleration and deceleration of the rotor is in accordance with both (1) desired flow rate and pressure and (2) stored individualized compressor characterization information."* See Attachment C, page 4.

[13] In the DeVries '133 patent litigation, the District Court also construed the terms *"stored," "individualized"* and *"compressor characterization information,"* as used in the phrase *"stored individualized compressor characterization information"* as appears in claims of the '133 patent. See Attachment C, pages 5-6. The phrase *"stored individualized compressor characterization information"* does not appear in any of the claims of the '511 patent.

[14] In the DeVries '133 patent litigation, the District Court adopted the parties' stipulated meaning of the word ***"blade"*** in claim 1 of the '133 patent as meaning, *"A vane."* See Attachment C, page 4. The District Court also adopted the parties' stipulated meaning of the phrase ***"formed circularly therearound"*** in claim 1 of the '133 patent as meaning, *"The blades of the rotor are positioned in a circular pattern on the rotor."* Id.

9

| | |
|---|---|
| said ventilator comprising: | |
| a) a compressor comprising: | *See claim 1* (¶(a): "a compressor comprising …"). |
| i) a housing having a gas inflow passageway for delivering gas into said housing and | *See claim 1* (¶(a)(i): "a housing having …"). |
| a non-valved gas outflow passageway from said housing; and | *See claim 1* (¶(a)(i): "a non-valved gas outflow passageway …"). |
| ii) a motor-driven rotor mounted within said housing, | *See claim 1* (¶(a)(ii): "a motor-driven rotor …"). |
| wherein when said rotor is rotated in a first direction, gas within said housing is compressed and expelled through said outflow passageway as lung inspiratory gas; | *See claim 1* (¶(a)(ii): "wherein when said rotor is rotated …"). |
| b) an oxygen blending apparatus in communication with the inflow passageway for blending oxygen with ambient air entering the inflow passageway to thereby provide oxygen-enriched air within said housing for subsequent compression and expulsion through said outflow passageway; and | *Airox Reference:* States that "[a]n oxygen accumulator [is] available" for the Airox device (page 128); see also page 66 ("all critical-care ventilators have some mechanism for mixing air and oxygen to achieve oxygen delivery …"); page 67 (describing use of gas accumulators to, e.g., "act[] as a mixing chamber for blended gases," including oxygen); page 112 ("oxygen can be titrated into the accumulator for the delivery of increased fractional inspired oxygen concentration ($F_{I_{O_2}}$, see Common Features of All Positive Pressure Ventilators)"); Figure 4-7 (page 119, depicting oxygen accumulator for attachment at a ventilator gas inlet port); page 138 (referring to "increas[ing] the $F_{I_{O_2}}$ by the attachment of (1) an $O_2$ accumulator to the gas entry port (Fig. 4-7) or (2) the titration of $O_2$ into the inspiratory limb between the ventilator and the humidifier (Fig. 4-26) or |

|  | internally"). See also Kacmarek, R.E., "The Practical Application of Home Mechanical Ventilatory Equipment," J. Neuro. Rehab. 6(2):103-112, e.g. page 107 and Figs. 8 and 9 (discussing "Supplemental Oxygen Delivery" using, e.g., the approaches of Figs. 4-7 and 4-26 of the Airox Reference). |
|---|---|
| c) a controller apparatus to intermittently accelerate and decelerate the rotation of said rotor in accordance with desired flow rate and pressure of inspiratory gas to thereby deliver discrete periods of inspiratory gas flow at said flow rate and pressure through said outflow passageway. | *See claim 1* (¶(b): "a controller apparatus …"). |

*Claim 4:*

| 4. The ventilator of claim 3, wherein said rotor comprises a plurality of blades formed circularly therearound. | *See claim 2.* |
|---|---|

*Claim 5:*

| 5. A compressor ventilator for ventilating lungs of a mammal, said ventilator comprising: | *See claim 1* (preamble). |
|---|---|
| a) a compressor comprising: | *See claim 1* (¶(a): "a compressor comprising …"). |
| i) a housing having a gas inflow passageway for delivering gas into said housing and | *See claim 1* (¶(a)(1): "a housing having …"). |
| a non-valved gas outflow | *See claim 1* (¶(a)(1): "a non-valved gas outflow passageway |

| | |
|---|---|
| passageway from said housing; and | …"). |
| ii) a motor-driven rotor mounted within said housing and | *See claim 1* (¶(a)(ii): "a motor-driven rotor …"). |
| powered by a portable battery, | *Airox Reference:* States that "[a] 1-h-long rechargeable battery is included.  The machine may also operate off both external dc battery and ac power" (page 128). |
| said rotor having a multiplicity of blades formed circularly therearound | *See claim 2.* |
| such that, when said rotor is rotated in a first direction, said blades will compress gas within said housing and expel compressed gas through said outflow passageway as lung inspiratory gas; and | *See claim 1* (¶(a)(ii): "wherein when said rotor is rotated …"). |
| b) a controller apparatus to intermittently accelerate and decelerate the rotation of said rotor in accordance with desired flow rate and pressure of inspiratory gas to thereby deliver discrete periods of inspiratory gas flow at said flow rate and pressure through said outflow passageway. | *See claim 1* (¶(b): "a controller apparatus …"). |

*Claim 6:*

| | |
|---|---|
| 6. A compressor apparatus for creating inspiratory gas flow in a | *See claim 1* (preamble, and ¶(b): "a controller apparatus … to thereby deliver discrete periods of inspiratory gas flow |

| | |
|---|---|
| mechanical ventilator, said compressor apparatus comprising: | …"). |
| a) a housing having a gas inflow passageway for delivering gas into said housing and | *See claim 1* (¶(a)(i): "a housing having …"). |
| a non-valved gas outflow passageway from said housing; and | *See claim 1* (¶(a)(i): "a non-valved gas outflow passageway …"). |
| b) a rotor rotably mounted within said housing, | *See claim 1* (¶(a)(ii): "a motor-driven rotor …"). |
| said rotor being constructed so that rotation thereof in a first direction will cause said rotor to (a) draw gas in said inflow passageway into the housing, (b) compress said gas, and (c) expel compressed gas as lung inspiratory gas through said outflow passageway; and | *See claim 1* (¶(a)(ii): "wherein when said rotor is rotated …"). |
| c) a controller for controlling the rotation of said rotor within said housing, said controller being operative to intermittently accelerate and decelerate the rotation of said rotor to deliver discrete periods of inspiratory gas flow at a desired flow rate and pressure through said outflow passageway. | *See claim 1* (¶(b): "a controller apparatus …"). |

*Claim 7:*

| | |
|---|---|
| 7. A method of providing ventilation to a mammal, said method comprising the steps of: | *Airox Reference:* Describes use of a "microprocessor-controlled ventilator" with human patients. |
| a) providing a compressor comprising: | *See claim 1* (¶(a): "a compressor comprising …"). |
| i) a housing having a gas inflow passageway for delivering gas into said housing and | *See claim 1* (¶(a)(i): "a housing having …"). |
| a non-valved gas outflow passageway from said housing; | *See claim 1* (¶(a)(i): "a non-valved gas outflow passageway …"). |
| ii) a rotor rotably mounted within said housing | *See claim 1* (¶(a)(ii): "a motor-driven rotor …"). |
| such that rotation of said rotor in a first direction will draw gas into said inflow passageway, compress said gas, and expel said gas out of said outflow passageway; and | *See claim 1* (¶(a)(ii): "wherein when said rotor is rotated …"). |
| iii) a controller for controlling the rotation of said rotor within said housing, said controller being operative to cause said rotor to intermittently accelerate and decelerate in accordance with desired flow rate and pressure of inspiratory gas to thereby deliver discrete periods of inspiratory gas flow at said flow rate and pressure through said outflow passageway; | *See claim 1* (¶(b): "a controller apparatus …"). |
| b) connecting the outflow passageway of said compressor to a conduit through which | *Airox Reference:* States that the "gas flow pattern [of the Airox device] is similar to all ventilators of this [home mechanical ventilation] type (Fig. 4-2)" (page 127); see also |

14

| | |
|---|---|
| inspiratory gas may be passed into lungs of said mammal; | Fig. 4-2 (page 112); Fig. 4-14 (page 128). |
| c) accelerating said rotor to a first rotational speed for sufficient time to deliver in accordance with desired flow rate and pressure of a desired inspiratory gas flow through said conduit at said flow rate and pressure and into the lungs; and | **Airox Reference:** States that the Airox device is an "microprocessor-controlled ventilator" having a "compressor-blower," capable of producing a square-wave flow pattern and a rectilinear pressure curve (compare Figure 4-3, page 113), in which the user can set parameters including rate, tidal volume, I/E ratio, assist/control trigger sensitivity, and high pressure alarm level (pages 127-128). "Inspiration is either time (control) or pressure (assist/control) cycled, while exhalation is volume cycled" (page 128). |
| d) reducing said rotor rotating speed sufficiently to terminate the inspiratory gas flow through said conduit and to allow an expiratory phase of a ventilation cycle to occur. | **Airox Reference:** States that the Airox device is an "microprocessor-controlled ventilator" having a "compressor-blower," capable of producing a square-wave flow pattern and a rectilinear pressure curve (pages 127-128). "Inspiration is either time (control) or pressure (assist/control) cycled, while exhalation is volume cycled" (page 128). |

*Claim 8:*

| | |
|---|---|
| 8. The method of claim 7, wherein the inspiratory gas flow delivered in step c) is limited by a parameter selected from the group of limiting parameters consisting of:<br>i) a predetermined minimum airway pressure;<br>ii) a predetermined maximum | **Airox Reference:** States that the Airox device is capable of producing a square-wave flow pattern and a rectilinear pressure curve (compare Figure 4-3, page 113), in which the user can set parameters including rate, tidal volume, I/E ratio, assist/control trigger sensitivity, and high pressure alarm level (pages 127-128). "Inspiration is either time (control) or pressure (assist/control) cycled, while exhalation is volume cycled" (page 128). "The high pressure alarm is in two steps. If the actual set level is |

15

| airway pressure;<br>iii) a predetermined minimum<br>flow rate;<br>iv) a predetermined maximum<br>flow rate;<br>v) a predetermined minimum tidal<br>volume; and<br>vi) a predetermined maximum<br>tidal volume. | reached, an alarm will sound but inspiration will continue.<br>If pressure continues to increase to set level plus 3.75<br>cmH$_2$O, the machine goes into exhalation" (page 128). |

*Claim 9:*

| 9. A compressor ventilator device for delivering inspiratory gas flow to a mammal, said device comprising: | *See claim 1* (preamble, and ¶(b): "a controller apparatus … to thereby deliver discrete periods of inspiratory gas flow …"). |
|---|---|
| a) a compressor having an intake port and an outflow port; | *See claim 1* (¶(a): "a compressor comprising …", ¶(a)(i): "a housing having a gas inflow passageway …", and ¶(a)(i): "a non-valved gas outflow passageway …"). |
| b) a non-valved inspiratory gas flow passageway for carrying gas from the outflow port of the compressor during an inspiratory phase of a ventilation cycle; | *See claim 1* (¶(a)(i): "a non-valved gas outflow passageway …"). |
| c) a motor for accelerating said compressor at the beginning of the inspiratory phase of the ventilation cycle to deliver inspiratory gas through said inspiratory gas flow passageway; and | *See claim 1* (¶(a)(ii): "a motor-driven rotor …", ¶(a)(ii): "wherein when said rotor is rotated…", and ¶(b): "a controller apparatus …". |

16

| | |
|---|---|
| d) a controller for controlling said compressor during the inspiratory phase of the ventilation cycle to maintain a desired inspiratory pressure and flow rate and for decelerating said compressor at the end of the inspiratory phase of the ventilation cycle. | *See claim 1* (¶(b): "a controller apparatus ..."). |

### Claim 10:

| | |
|---|---|
| 10. A compressor ventilator for ventilating lungs of a mammal, said ventilator comprising: | *See claim 1* (preamble). |
| a) a compressor having a gas inflow passageway for delivering gas into said compressor and | *See claim 1* (¶(a): "a compressor comprising ..."). |
| a gas outflow passageway for delivering gas from said compressor; and | *See claim 1* (¶(a)(i): "a ... gas outflow passageway ..."). |
| i) a motor-driven rotor mounted within said compressor, | *See claim 1* (¶(a)(ii): "a motor-driven rotor ..."). |
| wherein when said rotor is rotated in a first direction, gas within said compressor will be compressed and expelled through said outflow passageway as lung inspiratory gas; and | *See claim 1* (¶(a)(ii): "wherein when said rotor is rotated ..."). |
| b) a controller apparatus to intermittently accelerate and decelerate the rotation of said | *See claim 1* (¶(b): "a controller apparatus ..."). |

| | |
|---|---|
| rotor in accordance with desired flow rate and pressure of inspiratory gas to thereby deliver discrete periods of inspiratory gas flow at said flow rate and pressure through said outflow passageway. | |

*Claim 11:*

| | |
|---|---|
| 11. A compressor ventilator for ventilating lungs of a mammal, said ventilator comprising: | *See claim 1* (preamble). |
| a) a compressor comprising: | *See claim 1* (¶(a): "a compressor comprising ..."). |
| i) a housing having a gas inflow passageway for delivering gas into said housing and | *See claim 1* (¶(a)(i): "a housing having ..."). |
| a gas outflow passageway from said housing; and | *See claim 1* (¶(a)(i): "a ... gas outflow passageway ..."). |
| ii) a motor-driven rotor mounted within said housing, | *See claim 1* (¶(a)(ii): "a motor-driven rotor ..."). |
| wherein when said rotor is rotated in a first direction, gas within said housing is compressed and expelled through said outflow passageway as lung inspiratory gas; | *See claim 1* (¶(a)(ii): "wherein when said rotor is rotated ..."). |
| b) an oxygen blending apparatus in communication with the inflow passageway for blending oxygen with ambient air entering the inflow passageway to thereby | *See claim 3* (¶(b): "an oxygen blending apparatus ..."). |

18

PATENT

| | |
|---|---|
| provide oxygen-enriched air within said housing for subsequent compression and expulsion through said outflow passageway; and | |
| c) a controller apparatus to intermittently accelerate and decelerate the rotation of said rotor in accordance with desired flow rate and pressure of inspiratory gas to thereby deliver discrete periods of inspiratory gas flow at said flow rate and pressure through said outflow passageway. | *See claim 1* (¶(b): "a controller apparatus ..."). |

### Claim 12:

| | |
|---|---|
| 12. A compressor ventilator for ventilating lungs of a mammal, said ventilator comprising: | *See claim 1* (preamble). |
| a) a motor driven compressor having a gas inflow passageway and | *See claim 1* (¶(a): "a compressor comprising ...", ¶(a)(i): "a housing having a gas inflow passageway ...", and ¶(a)(ii): "a motor-driven rotor ..."). |
| a gas outflow passageway; and | *See claim 1* (¶(a)(i): "a ... gas outflow passageway ..."). |
| b) a controller apparatus to intermittently accelerate and decelerate the motor driven compressor in accordance with desired flow rate and pressure of inspiratory gas to thereby deliver discrete periods of inspiratory gas | *See claim 1* (¶(b): "a controller apparatus ..."). |

19

| flow at said flow rate and pressure through said outflow passageway. | |
|---|---|

### Claim 13:

| 13. A method of providing ventilation to a mammal, said method comprising the steps of: | *See claim 7* (preamble). |
|---|---|
| a) providing a compressor having | *See claim 1* (¶(a): "a compressor comprising ..."). |
| a housing, a gas inflow passageway for delivering gas into said housing and | *See claim 1* (¶(a)(i): "a housing having ..."). |
| a gas outflow passageway from said housing; | *See claim 1* (¶(a)(i): "a ... gas outflow passageway ..."). |
| i) a rotor rotably mounted within said housing | *See claim 1* (¶(a)(ii): "a motor-driven rotor ..."). |
| such that rotation of said rotor in a first direction will draw gas into said inflow passageway, compress said gas, and expel said gas out of said outflow passageway; and | *See claim 1* (¶(a)(ii): "wherein when said rotor is rotated ..."). |
| ii) a controller for controlling the rotation of said rotor within said housing, said controller being operative to cause said rotor to intermittently accelerate and decelerate in accordance with desired flow rate and pressure of inspiratory gas to thereby deliver discrete periods of inspiratory gas flow at said flow rate and pressure | *See claim 1* (¶(b): "a controller apparatus ..."). |

| through said outflow passageway. | |
|---|---|

*Claim 14:*

| | |
|---|---|
| 14. A compressor ventilator device for delivering inspiratory gas flow to a mammal, said device comprising: | *See claim 1* (preamble, and "a controller apparatus … to thereby deliver discrete periods of inspiratory gas flow …"). |
| a) a compressor having an intake port and an outflow port; | *See claim 1* (¶(a): "a compressor comprising …", ¶(a)(i): "a housing having a gas inflow passageway …", and ¶(a)(i): "a non-valved gas outflow passageway …"). |
| b) an inspiratory gas flow passageway for carrying gas from the outflow port of the compressor to the mammal during an inspiratory phase of a ventilation cycle; | *See claim 1* (¶(a)(i): "a … gas outflow passageway …"). |
| c) a motor for accelerating said compressor at the beginning of the inspiratory phase of the ventilation cycle to deliver inspiratory gas through said inspiratory gas flow passageway; and | *See claim 1* (¶(a)(ii): "a motor-driven rotor …", ¶(a)(ii): "wherein when said rotor is rotated…", and ¶(b): "a controller apparatus …"). |
| d) a controller for controlling said compressor during the inspiratory phase of the ventilation cycle to maintain a desired inspiratory pressure and flow rate and for decelerating said compressor at the end of the inspiratory phase of | *See claim 1* (¶(b): "a controller apparatus …"). |

21

| the ventilation cycle. | |

In view of the points of potential pertinency detailed above, the Examiner may consider that the Airox Reference raises a substantial new question of patentability regarding one or more of claims 1-14 of the '511 patent under 35 U.S.C. §§ 102 and/or 103.

PATENT

## IV.    Conclusion

For the reasons explained above, reexamination of the '511 patent is respectively requested pursuant to 35 U.S.C. §§ 301-307 and 37 C.F.R. § 1.510.

Respectfully submitted,

Dated: _July 13_, 2007        By: _____

Kenneth J. Sheehan
Reg. No. 36,270
Attorney for Patent Owner

23

## INDEX OF "ATTACHMENTS" TO REQUEST FOR REEXAMINATION

**Attachment A:**    U.S. Patent No. 6,877,511 (double-column copy of the subject patent).

**Attachment B:**    "Airox Reference"

**Attachment C:**    Copyright Office Search Results for "Airox Reference"

**Attachment D:**    June 30, 2000 "Markman" claim construction order in DeVries '133 patent litigation (construing terms in claim 1 of DeVries et al. U.S. Patent No. 5,968,133)